## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROCKET MORTGAGE, LLC,
a Michigan limited liability company,

      Plaintiff,

v.

JMGROUP FINANCIAL LLC,
a Florida limited liability company, and
JASON LIONO MANTIS a/k/a
JASON MORALES, an individual,

      Defendants.

Case No. 2:23-cv-10791
Hon.

---

Matthew Mitchell (P69810)
MADDIN HAUSER ROTH &
HELLER, P.C.
Attorneys for Plaintiff Rocket
Mortgage, LLC
28400 Northwestern Hwy., 2nd Floor
Southfield, MI 48034
(248) 827-1874
mmitchell@maddinhauser.com

---

## COMPLAINT

      Plaintiff, ROCKET MORTGAGE, LLC F/K/A QUICKEN LOANS, LLC

F/K/A QUICKEN LOANS INC. ("Rocket Mortgage"[1]), by and through its

---

[1] Quicken Loans Inc. converted to Quicken Loans, LLC on 4/5/20/20. Quicken
Loans, LLC then changed its name to Rocket Mortgage, LLC effective 7/31/2021.

undersigned counsel, MADDIN HAUSER ROTH & HELLER, P.C., states as follows for its Complaint against JMGROUP FINANCIAL LLC ("Broker" or "JMGroup") and JASON LIONO MANTIS A/K/A JASON MORALES ("Mantis") (Broker and Mantis will hereinafter be referred to collectively as the "Defendants"):

<u>**JURISDICTION AND VENUE**</u>

1.      Rocket Mortgage, LLC is a Michigan limited liability company whose sole member is RKT Holdings, LLC, a Michigan limited liability company. Rock Holdings Inc., a Michigan Corporation with its principal place of business in Michigan, and Rocket Companies, Inc., a Delaware publicly-traded corporation with its principal place of business in Michigan, are the only entities that are members of RKT Holdings, LLC. There are no publicly held companies that hold 10% or more of Rocket Mortgage, LLC. Therefore, Rocket Mortgage is deemed a citizen of Delaware and Michigan, only, for purposes of diversity jurisdiction.

2.      Broker is a limited liability company and, upon information and belief, all members of Broker are citizens of the State of Hawaii for purposes of diversity jurisdiction. Therefore, Broker is deemed a citizen of Hawaii, only, for purposes of diversity jurisdiction.

3.     Upon information and belief, Defendant Mantis is an individual domiciled in Hawaii and the sole and managing member of Broker. Therefore, Mantis is deemed a citizen of Hawaii, only, for purposes of diversity jurisdiction.

4.     The subject Broker Agreement dated August 29, 2019 between JMGroup and Rocket Mortgage (then known as Quicken Loans Inc.) (**Exhibit A**, "Agreement") contains the following provision:

> **10.12. GOVERNING LAW; JURISDICTION**. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal law and the laws of the State of Michigan. Any action arising out of this Agreement or the transactions contemplated hereby may be instituted in any state or federal court located in the State of Michigan. Further, each party expressly waives any objection which such party may have to the laying of venue of any such action, and irrevocably submits to the jurisdiction of any such court and agrees to be fully bound by any final unappealed decision of those courts.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332 because this action is between citizens of different States and the amount in controversy exceeds $75,000.00.

6.     This Court has general personal jurisdiction over Defendants because they have consented to the jurisdiction of this Court by virtue of Section 10.12 of the Agreement. Mich. Comp. Laws § 600.711(2).

7.     This Court also has specific personal jurisdiction over Defendants because they transacted business in Michigan in connection with the transactions

described in this Complaint, caused acts to be done and consequences to occur in Michigan resulting in an action for tort, and otherwise have constitutionally sufficient minimum contacts with the State of Michigan.  Mich. Comp. Laws § 600.715(1)-(2).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Eastern District of Michigan is a judicial district in which a substantial part of the events or omissions giving rise to Rocket Mortgage's claims occurred and by virtue of Section 10.12 of the Agreement.

## **GENERAL ALLEGATIONS**

9.     On August 29, 2019, Rocket Mortgage (then known as Quicken Loans Inc.) and Broker entered into a valid and binding Agreement pursuant to which Broker agreed to "perform origination services and submit loan application packages" to Rocket Mortgage for loans secured by residential real property, from time to time.  Agreement, Recitals, p. 1.

10.     Mantis, the Managing Member and Owner of Broker, signed the Agreement on behalf of Broker and also is identified as the contact person for Broker for purposes of the notice section of the Agreement.  Agreement, Section 10.2, p. 14, 19.

11. Pursuant to the Agreement, Broker submitted the following loan applications to Rocket Mortgage and, in reliance on the loan applications, Rocket Mortgage funded the following twenty-four (24) loans (collectively, "the Loans"):

| Loan Number | Closing Date | Original Loan Amount |
|---|---|---|
| xxxxxx4623 | 8/13/2021 | $414,000 |
| xxxxxx1410 | 8/17/2021 | $320,000 |
| xxxxxx8982 | 9/10/2021 | $247,000 |
| xxxxxx8161 | 9/10/2021 | $342,000 |
| xxxxxx9424 | 11/15/2021 | $347,985 |
| xxxxxx8514 | 11/19/2021 | $319,113 |
| xxxxxx5243 | 12/3/2021 | $513,000 |
| xxxxxx0745 | 12/7/2021 | $398,400 |
| xxxxxx3853 | 1/4/2022 | $327,750 |
| xxxxxx0783 | 1/14/2022 | $450,000 |
| xxxxxx7318 | 1/18/2022 | $296,400 |
| xxxxxx1485 | 4/20/2022 | $294,566 |
| xxxxxx5546 | 4/28/2022 | $403,750 |
| xxxxxx6001 | 4/22/2022 | $470,250 |
| xxxxxx1464 | 4/29/2022 | $307,800 |
| xxxxxx9958 | 5/11/2022 | $503,500 |
| xxxxxx9044 | 8/18/2022 | $422,211 |
| xxxxxx6454 | 8/29/2022 | $240,562 |
| xxxxxx9688 | 9/6/2022 | $229,500 |
| xxxxxx9652 | 9/21/2022 | $615,600 |
| xxxxxx1903 | 12/16/2022 | $331,550 |
| xxxxxx0906 | 1/3/2023 | $378,000 |
| xxxxxx9531 | 1/13/2023 | $165,000 |
| xxxxxx6377 | 1/27/2023 | $264,100 |

12. The aggregate current unpaid principal balances of the aforementioned Loans far exceed the sum of $75,000.00.

13.     In the Agreement, Broker agreed that "Each Application submitted to Lender shall be subject to strict compliance with (i) the terms and conditions contained in this Agreement, (ii) the Broker Guide, and (iii) any other communications, announcements or guidelines provided by Lender to Broker from time to time."  Agreement § 2.2.

14.     The Agreement placed a number of origination-related responsibilities on Broker, including the following:

**2.3. PERFORMANCE OF BROKER SERVICES.** In addition to taking the information from Applicant, completing and compiling the Application, and providing and explaining the broker disclosure(s), Broker shall, for every loan, perform services, including but not limited to the following:

(a) analyzing the Applicant's income and debt and pre-qualifying the prospective Applicant to determine the maximum loan amount that the prospective Applicant can afford;
(b) educating the Applicant in the home buying and financing process, advising the Applicant about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product;
(c) collecting financial information (e.g., tax returns, bank statements) and other related documents that are part of the application process;
(d) initiating/ordering verifications of employment (VOEs) and verifications of deposits (VODs);
(e) initiating/ordering requests for mortgage and other loan verifications;
(f) initiating/ordering appraisals;
(g) providing disclosures to prospective Applicants as required by applicable laws;
(h) assisting Applicants in understanding and addressing credit problems;

(i) maintaining regular contact with Applicants, real estate agents, and Lender between application and closing to apprise them of the status of the Application and to gather any additional information as needed;
(j) initiating/ordering legal documents (e.g., title reports);
(k) analyzing the information provided by Applicant and confirming that the Applicant's Application complies with applicable laws; and
(l) providing such other services as may be required by a particular loan transaction.

15.     The Agreement further provided that Broker "shall be responsible for all communications with Applicants," (Agreement, § 2.5), and required by virtue of Section 4.4, among other provisions, that Broker conduct its business in conformance with all applicable laws:

> **4.4. COMPLIANCE WITH ALL APPLICABLE LAWS.** Broker has complied, and shall comply, both in the conduct of business generally, and in its origination of each mortgage loan, with all applicable laws ("Laws"), including, without limitation upon the generality of the foregoing, the Equal Credit Opportunity Act ("ECOA") and Regulation B, including without limitation its requirements relating to nondiscrimination; the Truth-in-Lending Act, and Regulation Z; RESPA and Regulation X; the Bank Secrecy Act and 31 CFR Chapter X; the Fair Housing Act; the Gramm-Leach-Bliley Act; the S.A.F.E. Mortgage Licensing Act and Regulations G and H; the Mortgage Acts and Practices-Advertising and Regulation N; the Fair Credit Reporting Act; and all applicable state and local laws and regulations governing mortgage lending and mortgage brokerage (including New York Executive Law Section 296-a if applicable).
>
> ***
>
> Broker further represents and warrants that it shall not engage in any unfair, deceptive, or abusive acts or practices.
>
> ***

{03763359 v1}                                        7

Broker represents and warrants that it not only complies with all applicable state and federal laws, but that it has implemented and effectively maintains appropriate policies, procedures, internal controls, and training materials ("Compliance Program") covering such laws. Failure by Broker to maintain a satisfactory Compliance Program will result in the termination of this Agreement. Failure by Broker to maintain satisfactory compliance with all Laws will result in termination of this Agreement. Broker regularly conducts appropriate training of its employees concerning such state and federal laws. Broker agrees to provide, upon Lender request, any policies, procedures, internal controls, training materials, and audit results related to Broker's Compliance Program and the training of its employees.

**4.7 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender) involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**4.8. NO UNTRUE OR MISLEADING STATEMENTS.** No representation, warranty or written statement made by Broker to Lender in this Agreement or in any schedule, written statement or document furnished to Lender in connection with the transactions contemplated hereby contains or will contain any untrue statement of

8

a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

16.     As to each individual Loan, JMGroup represented and warranted the

following to Rocket Mortgage:

As further inducement to Lender to enter into this Agreement and to consummate the closing and funding of mortgage loans hereunder, Broker makes the below referenced representations, warranties and covenants. Each of the following representations and warranties (a) applies to any and all Applications submitted by Broker to Lender, (b) is for the benefit of Lender and its successors and assigns, (c) continues in full force and effect for so long as Lender is subject to any risk of loss or liability as to any Application submitted by Broker, (d) is deemed to have been relied on by Lender, regardless of any independent investigation it may have made or may hereafter make, and (e) is in addition to any other specific representations or warranties contained elsewhere herein.

**5.1. COMPLIANCE WITH ALL APPLICABLE LAWS.** Broker has complied with and all Applications have complied with all applicable federal, state and local laws, rules, and regulations, including without limitation, the Truth-In-Lending Act and Regulation Z; the Fair Credit Reporting Act; the Equal Credit Opportunity Act and Regulation B; the Real Estate Settlement Procedures Act and Regulation X; the Bank Secrecy Act and 31 CFR Chapter X; the Fair Housing Act and all applicable state and federal fair lending and fair housing regulations (including New York Executive Law Section 296-a if applicable); the Gramm- Leach-Bliley Act; the S.A.F.E. Mortgage Licensing Act and Regulations G and H; the Mortgage Acts and Practices-Advertising and Regulation N; and all applicable predatory and abusive lending laws. No Application submitted by Broker shall constitute a transaction which would be subject to coverage under the Home Ownership and Equity Protection Act ("HOEPA") or Section 32 of Regulation Z of the Truth-in-Lending Act, or constitute a Higher-Priced Mortgage Loan as that term is defined under Regulation Z, or which would otherwise be considered a "high rate" or "high cost" loan under applicable state law.

**5.2.  COMPLIANCE WITH LENDER POLICIES AND PROCEDURES.** The origination of each mortgage loan complies in all respects with the terms of this Agreement. Each Application submitted was originated by Broker and not by a third party. All Applications, including all mortgage loan documents and information and documentation submitted in connection with such Applications, have been prepared and/or completed in accordance with applicable law and all information provided by each of Applicant and Broker in such Applications are true and correct in all respects and do not fail to disclose any facts which could be material or which would make such information misleading. All broker compensation has been fully disclosed to Applicant in compliance with applicable laws. The Applicant has executed and received a copy of all broker disclosure(s) as required by applicable law and there are no disputes with respect to Broker's compensation in connection with the origination or closing of each mortgage loan.

**5.3 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender )involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**5.4. FACTUAL DISCLOSURE.** All facts relating to any Application and/or related mortgage loan transaction which are known or should

be known to Broker which may adversely affect the value of the mortgaged property, the credit, character or capacity of the Applicant, the validity of the mortgage, or any other aspect of the transaction have been disclosed in writing to Lender.

**5.5. NO ADVERSE CIRCUMSTANCES.** Broker has no knowledge of any circumstances or conditions with respect to any Application, mortgaged property, Applicant or Applicant's credit standing that reasonably could be expected to cause third party investors to regard the related mortgage loan as an unacceptable investment, cause the mortgage loan to become delinquent or adversely affect the value or marketability of the mortgage loan.

\*\*\*

**5.8.   COMPLIANCE   WITH   LENDER   REQUIREMENTS, FNMA, FHLMC OR INVESTOR GUIDELINES.** All Applications submitted to Lender shall be in full conformance with this Agreement, the Broker Guide and all applicable Lender requirements. If the Application is submitted to the Lender for a loan intended to be a conventional conforming loan, it has been originated in conformance with all applicable requirements of Fannie Mae or Freddie Mac for sale to Fannie Mae or Freddie Mac and inclusion in a Fannie Mae or Freddie Mac mortgage backed securities pool, as applicable, and is otherwise originated as an investment quality loan suitable for sale on the secondary market to a secondary market investor.

(collectively, "the Loan-Level Representations and Warranties").

17.    The Agreement further required JMGroup to perform its obligations to Rocket Mortgage in good faith: "The parties hereto agree to deal in good faith with each other at all times."  Agreement § 10.15.

18.    Broker failed to perform its services under the Agreement in good faith and in conformance with applicable laws and materially breached the

aforementioned contractual obligations and duties, including but not limited to the Loan Level Representations and Warranties.

19.     More specifically, Rocket Mortgage and its investors discovered after the closing of the Loans that JMGroup, with full knowledge and as part of a fraudulent scheme orchestrated by Mantis, submitted loan applications that misrepresented the borrowers' employment, income, and assets and supported these fraudulent loan applications with documents that were misleading, untrue, fabricated, altered and otherwise fraudulent.

20.     For example, JMGroup, with the full knowledge, approval, and active participation of Mantis, submitted applications representing that the borrowers were employed by either Total One Construction or Biocure Consulting ("the Sham Employers") when in fact these companies were sham entities created by Mantis to perpetrate a mortgage fraud scheme against Rocket Mortgage and its investors.

21.     In connection with the Loan applications, JMGroup and Mantis supported the borrowers' fictitious employment with the Sham Employers with additional fraud, including by fabricating pay stubs and altering bank statements, in an attempt to demonstrate that the borrowers actually earned and deposited income from the Sham Employers, even though this was untrue.

22.    Furthermore, when Rocket Mortgage attempted to verify the borrowers' employment, the phone number that Mantis provided for the Sham Employers was a number that would ring to the telephone of Mantis or someone acting at his direction so as to give the illusion that the Sham Employers were "verifying" the borrowers' false employment status and income.

23.    In addition, Defendants submitted certain applications within the Loan population wherein the borrowers misrepresented that they would be using the secured property as their primary residence when, in fact, the borrowers intended to use the properties as rentals, as evidenced by the properties being listed for rent within days of closing.

24.    Defendants engaged in this fraud scheme knowingly, willfully, and with specific and malicious intent to defraud Rocket Mortgage and induce it to fund the Loans.

25.    Mantis personally and actively participated in this fraud scheme and therefore has personal liability to Rocket Mortgage in tort and otherwise.

26.    Defendants' acts and omissions constitute bad faith and a breach of the duty of good faith and fair dealing owed to Rocket Mortgage.

27.    Broker's acts, omissions, and material breaches of the Agreement constitute bad faith and a breach of the duty of good faith and fair dealing owed to

Rocket Mortgage and entitle Rocket Mortgage to exercise its rights and remedies under the Agreement.

    28.    Section 6 of the Agreement provides:

**6. REMEDIES FOR BREACH OF AGREEMENT.** In addition to any other rights and remedies that Lender may have, upon discovery by either Broker or Lender of any breach of any representation, warranty or covenant of this Agreement, the party discovering the breach shall promptly notify the other. Within thirty (30) days after discovery by or notice to Broker of any breach, Broker shall promptly cure such breach to the reasonable satisfaction of Lender. Notwithstanding the cure period set forth above, in the event of a breach of representation, or warranty, or covenant of this Agreement which in the sole judgment of Lender cannot be cured within such thirty (30) day time period, Lender may demand and Broker shall be required to repurchase in all material respects said loan from Lender or the investor to whom Lender sold the loan for the "Repurchase Price."

The Repurchase Price shall be an amount equal to the sum of (i) the current unpaid principal balance of the loan at the time of repurchase (or at the time of the foreclosure sale date if the related loan has been foreclosed), (ii) accrued but unpaid interest on such principal balance at the Note rate from the paid-to date of the loan through and including the last day of the month in which the Repurchase Price is paid, (iii) all costs and expenses, including without limitation, reasonable attorneys' fees and expenses, incurred by Lender as a result of Broker's breach of this Agreement or enforcing the terms of this Agreement or Broker's obligation to repurchase the loan, (iv) any premium paid by Lender in excess of the principal balance of the loan at the time of purchase if Lender has not sold the loan at the time of Broker's repurchase or if Lender has sold the loan and it is required to reimburse the purchaser, the premium that the purchaser paid to Lender, (v) any unreimbursed advances made by Lender, including without limitation taxes or insurance or payments authorized by the Note or the mortgage or applicable law to protect Lender's interest in the loan or related property and (vi) any other fees, costs or amounts

relating thereto. The Repurchase Price shall be reduced by (i) any proceeds of mortgage insurance collected by Lender with respect to the loan that have not been applied to the unpaid principal balance; and (ii) if the loan has been foreclosed and the property has been sold to a third party, the proceeds of the sale price received by Lender net of all advances, costs and expenses, including but not limited to reasonable attorneys' fees and expenses, incurred by Lender in connection with such sale.

29.    Section 7 of the Agreement makes clear that Broker is responsible for

the fraud perpetrated in connection with the Loans:

**7. RESPONSIBILITY FOR FRAUD**. Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

30.    Section 8 of the Agreement requires that Broker indemnify and hold

Rocket Mortgage harmless in connection with its material breaches of the

Agreement, including but not limited to attorney fees that Rocket Mortgage has

incurred and will continue to incur:

In addition to the remedies set forth in Section 6 above, Broker shall indemnify, defend and hold Lender harmless against and in respect of, and shall reimburse Lender for any and all losses, liabilities, claims, damages, costs including without limitation attorneys' fees and costs (including allocated costs of in- house counsel), and actions suffered or incurred by Lender which arise out of, result from or relate to:

(a) the breach by Broker of any covenant, condition, term, obligation, representation or warranty contained (i) in this Agreement, or (ii) in any written statement or certificate furnished by Broker pursuant to this Agreement, including without limitation those arising from any improper origination or processing of mortgage loans; or (b) any material act or omission of Broker or any employee or agent of Broker which adversely affects any mortgage loan submitted to and funded by Lender hereunder.

Without limiting the foregoing, Broker's obligations under this Section 8 shall include costs and expenses associated with Lender's efforts to enforce this Agreement. In all actions with third parties in which Lender has the right to be indemnified hereunder, Lender shall have the complete and exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third party including without limitation the right to compromise, settle, defend or continue any such action.

31.    The Agreement, by virtue of Section 8 and otherwise, constitutes a valid and binding express contract of indemnity between Rocket Mortgage and Broker.

32.    Rocket Mortgage previously has provided written notice to Broker of its breaches and demanded that Broker repurchase the affected Loans and otherwise indemnify and hold Rocket Mortgage harmless against all losses, damages, and other liabilities.

33.     Despite that notice, JMGroup has willfully failed and/or refused to honor the terms of the Agreement.

34.     Defendants' acts and omissions, violations of duty, material breaches of the Agreement, and otherwise fraudulent conduct have proximately caused Rocket Mortgage damages, including but not limited to interfering with Rocket Mortgage's relationships with third-party investors, forcing Rocket Mortgage to repurchase all or some of the Loans due to demands by the Loans' investors, and causing Rocket Mortgage to pay the Broker compensation on Loans that were originated in violation of the Agreement and applicable law.

35.     Defendants' conduct has caused Rocket Mortgage to suffer a loss in reputation as a skilled company and, in light of the clear, malicious, and willful fraud that occurred in this case, exemplary damages are appropriate against the Defendants.

36.     For certain of Defendants' breaches and violations of duties under the Agreement, Rocket Mortgage does not have an adequate remedy at law and therefore Broker must be required to specifically perform its obligations under the Agreement, including to repurchase the Loans.

37.     Rocket Mortgage, at all times, complied with the terms of the Agreement and otherwise acted in good faith and in a commercially reasonable manner.

## COUNT I - BREACH OF CONTRACT BY JMGROUP

38.     Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

39.     The Agreement is a valid and binding contract between Rocket Mortgage and JMGroup.

40.     Rocket Mortgage fully and substantially performed its obligations under the Agreement.

41.     JMGroup materially breached its obligations under the Agreement as set forth herein.

42.     Rocket Mortgage has given Broker written notice of its material breaches in accordance with the Agreement, but Broker has failed and/or refused to remedy same or to honor its obligations to repurchase the Loans and indemnify and hold Rocket Mortgage harmless against its losses.

43.     As a direct and proximate result of Broker's breaches, Rocket Mortgage has suffered and continues to suffer damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Broker on Count I of this Complaint in an amount exceeding $75,000.00, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

## COUNT II – BREACH OF EXPRESS INDEMNITY AGREEMENT BY JMGROUP

44.     Rocket Mortgage incorporates all previous allegations as if fully restated herein.

45.     Rocket Mortgage and JMGroup entered into a valid and binding indemnification agreement.

46.     Broker agreed to indemnify and hold Rocket Mortgage harmless against, among other things, damages sustained by Rocket Mortgage due to Broker's breaches of the Agreement and other acts, events, and occurrences, as more fully set forth in section 8 of the Agreement.

47.     By committing material breaches and violating its duty of good faith and fair dealing in connection with its performance under the Agreement, Broker has materially breached the express indemnification agreement.

48.     Rocket Mortgage has demanded that JMGroup indemnify and hold Rocket Mortgage harmless for damages sustained, but JMGroup has failed and/or refused to do so.

49.     As a direct and proximate result of JMGroup's material breaches of the indemnity agreement, Rocket Mortgage has suffered and continues to suffer damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Broker on Count II of this Complaint in an amount exceeding $75,000.00, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

## <u>COUNT III – SPECIFIC PERFORMANCE BY JMGROUP</u>

50.     Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

51.     The Agreement is a valid and binding contract between Rocket Mortgage and JMGroup.

52.     Rocket Mortgage has substantially performed under the Agreement and is willing and able to perform its remaining obligations, if any.

53.     Broker is able to perform its remaining obligations under the Agreement, including but not limited to its obligation to repurchase the Loans at the Repurchase Price.

54.     Broker must be ordered to specifically perform is remaining obligations under the Agreement, including but not limited to its repurchase obligations, because for certain of its material breaches and violations of duty as stated herein, Rocket Mortgage has no adequate remedy at law.

WHEREFORE, Rocket Mortgage respectfully requests a judgment on Count III that requires, among other things, an order compelling Broker to specifically perform its remaining obligations under the Agreement, including but not limited to its obligation to repurchase the Loans at the Repurchase Price, and for all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

## COUNT IV – FRAUD AGAINST DEFENDANTS

55.    Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

56.    Defendants owed Rocket Mortgage duties that were separate and distinct from the Agreement and outside the scope of same, including but not limited to a duty not to defraud, mislead, or otherwise intentionally deceive Rocket Mortgage.

57.    With respect to each of the Loans, Defendants violated those separate and distinct duties by, on the dates and at the time the applications and other documents relating to the Loans were submitted and on the date the Agreement was executed, maliciously, deliberately, willfully making false material representations of fact with respect to, among other things, Broker's business practices, capabilities and operations, the borrowers' income, assets, employment,

and/or use and occupancy of the properties, and the nature and quality of the subject Loans.

58.     Defendants made these misrepresentations with knowledge of their falsity and with specific intent that Rocket Mortgage would rely upon said misrepresentations by funding the Loans.

59.     Rocket Mortgage reasonably and justifiably relied upon Defendants' misrepresentations to its detriment, including by funding the Loans.

60.     Defendants' misrepresentations have proximately caused Rocket Mortgage to sustain and to continue to sustain damages.

WHEREFORE, Rocket Mortgage respectfully requests judgment against Defendants on Count IV of this Complaint in an amount exceeding $75,000.00, together with interest, costs, exemplary damages, and attorney fees and all other relief in Rocket Mortgage's favor that the Court deems just and equitable under the circumstances.

## COUNT V – DECLARATORY JUDGMENT AGAINST JMGROUP

61.     Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

62.     There exists a genuine legal dispute between Rocket Mortgage and JMGroup as to their rights and obligations under the Agreement.

63.    The parties are in need of a declaration from the Court of their respective rights and obligations under the Agreement, including whether Broker is obligated to repurchase the Loans from Rocket Mortgage at the Repurchase Price and indemnify and hold Rocket Mortgage harmless against all monetary losses it has incurred and may yet incur as a result of Broker's breaches of the Agreement.

64.    For certain of JMGroup's material breaches and violations of duty as stated herein, Rocket Mortgage has no adequate remedy at law.

WHEREFORE, Rocket Mortgage respectfully requests a Declaratory Judgment on Count V declaring that Broker is obligated to repurchase the Loans from Rocket Mortgage at the Repurchase Price and to indemnify and hold Rocket Mortgage harmless against all monetary losses it has incurred and may yet incur as a result of Broker's breaches of the Agreement.

Respectfully submitted,

MADDIN HAUSER ROTH & HELLER, P.C.

By: */s/Matthew Mitchell*
    Matthew Mitchell (P69810)
    28400 Northwestern Highway
    Essex Centre-Second Floor
    Southfield, MI 48034
    (248) 827-1874
    mmitchell@maddinhauser.com
    *Attorneys for Rocket Mortgage, LLC*

Dated:  April 6, 2023